UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14CV-00031

TONY ELLIOTT                                                                                    PLAINTIFF

VS.

BOARD OF EDUCATION OF HOPKINS
COUNTY, KENTUCKY, et al.                                                                DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Board of Education of Hopkins County, Kentucky, Superintendent Linda Zellich, and former Superintendent James Lee Stevens, for partial summary judgment dismissing Plaintiff's claims for racial discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and the Kentucky Civil Rights Act, KRS Chapter 344, and Plaintiff's claim under KRS § 161.760 as it pertains to the 2011-2012 school year [DN 27]. Fully briefed, this matter is ripe for decision.

I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Tony Elliott, filed a race discrimination action pursuant to Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act against the Defendants, the Board of Education of Hopkins County, Kentucky (the "Board"), Hopkins County School District Superintendent Linda Zellich in her official capacity, and former Hopkins County School District Superintendent James Lee Stevens in his individual capacity, alleging that his days of extended employment and rate of pay were reduced by the Defendants as a result of racial discrimination. Elliott further claims that Defendants failed to give him proper notice of his reduction in pay as required by KRS § 161.760(3) and failed to reduce his job responsibilities pursuant to KRS § 161.760(3).

In 1995, Elliott filed suit against the Board for racial discrimination. The suit was settled in 2002 by a written Settlement Agreement. Under the Settlement Agreement, Elliott was guaranteed his position as a Social Worker/Counselor through the 2002-2003 school year with

225 days of employment. For later school years, the Board agreed not to seek to reduce Elliott's days of employment or pay without just cause.

From the 2001-2002 school year through the 2010-2011 school year, Elliott was assigned to work under a certified employee contract for 225 days. His salary was based upon his rank and experience according to the uniform salary schedule adopted by the Defendant Board of Education. Plaintiff was compensated for his extended days, above the base contract of 185 days per school year, at the contract rate determined from his base salary. The daily rate of pay for extended days is derived by dividing the base salary by 185 days. During this time period, the Plaintiff was assigned and continues to serve in a certified positon as counselor at Hopkins County Alternate Day Treatment ("ADT") which operates on an extended school year of 210 instructional days and 230 program days.

In a letter from then-Superintendent James Stevens dated April 27, 2011, Elliott was notified that due to "significant reduced funding . . . from numerous sources," Elliott's employment days for the 2011-2012 school year would be reduced from 225 to 210 days, with extended days of employment to be paid at the contract rate. Elliott was given the option to work an additional 15 days at $27.00 per hour for six hours per day. As a result of being paid at the hourly rate, Elliott suffered $2,081.70 in lost wages for the 2011-2012 school year. Elliott maintains that his job responsibilities during that calendar year were not reduced contrary to the requirement of KRS § 161.760(3).

The following year, Elliott received another letter from Stevens dated May 29, 2012, stating that Elliott's employment days were being further reduced from 210 to 185 days. Elliott was given the option to work an additional 25 six-hour days at $27.00 per hour, for a total of 210 days. The letter did not mention the reason for the reduction in employment days. As a result of

3

being paid at the hourly rate and loss of hours, Elliott suffered $ 8,101.60 in lost wages for the 2012-2013 school year. Elliott maintains that his job responsibilities were again not reduced in violation of KRS § 161.760. Further, Elliott contends that the letter of May 29, 2012, was not timely issued under KRS § 161.760(3). The terms of Plaintiff's employment for the subsequent years, the 2013-2014 and 2014-2015 school years, remained unchanged from the 2012-2013 school year; that is, Elliott has continued to be employed under a 185-day contract, with 25 optional extended employment days, for six hours per day at the hourly rate of $27 per hour.

Believing that these reductions in his extended days were racially motivated, Plaintiff filed a complaint alleging race and age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on March 1, 2013. On December 31, 2013, the EEOC issued a right-to-sue letter. On March 31, 2014, Plaintiff filed this current action alleging claims of race discrimination pursuant to Title VII and KRS Chapter 344 and a claim for violation of KRS § 161.760(3). Defendants now move for partial summary judgment.

### III. DISCUSSION

Defendants argue that summary judgment on Plaintiff's claim of race discrimination under Title VII, 42 U.S.C. § 2000e–2(a)(1), and the Kentucky Civil Rights Act ("KCRA"), KRS § 344.010, should be granted because Plaintiff failed to state a prima facie case and failed to show that the legitimate, nondiscriminatory reason for Plaintiff's reduction in hours was a pretext for unlawful discrimination. Defendants also maintain that Plaintiff's KRS § 161.760 claim related to the 2011-2012 school year fails as a matter of law because Plaintiff's responsibilities were reduced during the school year. The Court shall first address Plaintiff's Title VII claim.

**A. Prima Facie Case**

Defendant first argues that Plaintiff has failed to make out a prima facie case of

4

discrimination under Title VII. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Where, as here, a plaintiff offers only indirect evidence of discrimination, he may establish a prima facie case under Title VII by showing: "1) he is a member of a protected class; 2) was qualified for the job; 3) he suffered an adverse employment decision; and 4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." Newman v. Federal Express Corp., 266 F.3d 401, 406 (6th Cir. 2001).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410–11 (6th Cir. 2008); Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This means that in order to withstand a motion for summary judgment a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir.1994).

Defendants concede that Plaintiff is a member of a protected class, qualified for his job, and that reduction in work hours qualifies as an adverse employment action. However, Defendants argue that Plaintiff failed to demonstrate that similarly situated non-protected employees were treated more favorably. In a discrimination case, the Sixth Circuit has explained

5

that "[i]n order for . . . employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [non-protected] employees who he alleges were treated more favorably." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). See also Knox v. Neaton Auto Prods. Mfg., Inc., 375 F.3d 451, 458 (6th Cir. 2004). In making this determination, courts assess certain factors, such as whether the comparable employees "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." MacDonald–Bass v. J.E. Johnson Contracting, Inc., 493 Fed. Appx. 718, 724 (6th Cir. 2012)(quoting Noble v. Brinker Int'l, Inc., 391 F.3d 715, 729 (6th Cir. 2004) (citation omitted)). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." Leadbetter v. Gilley, 385 F.3d 683, 691 (6th Cir. 2004) (quoting Pierce, 40 F.3d at 801). The Sixth Circuit recognizes that these factors are not rigid requirements, but "are only apposite where they are meaningful to the particular claim of discrimination presented." Bobo v. United Parcel Service, Inc., 665 F.3d 741, 751 (6th Cir. 2012). See also Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)). The Sixth Circuit has cautioned that the purpose of Title VII is "not served by an overly narrow application of the similarly situated standard." Jackson v, Fed Ex Corporate Services, Inc, 518 F.3d 388, 396 (6th Cir. 2008).

Plaintiff contends that Peter Phelan and he are similarly situated for Title VII purposes because they both are certified employees at alternative schools in the District and both have or had extended days. According to Plaintiff, Peter Phelan, a Caucasian teacher at Hopkins County Schools Academy (the "Academy"), continued to be paid extended days at his regular daily

6

contract rate after Plaintiff's pay was reduced. The Academy is an alternative program within the Hopkins County Schools system just like ADT. Phelan, a certified employee, transferred from the ADT facility to the Hopkins County Academy in 2010 where he was given a position as Lead Teacher with 10 extended days. The "Lead Teacher" title is not listed on the district's extra service pay schedule. In contrast to ADT, the Academy is not required to operate an extended school calendar of 210 instructional days. Nevertheless, for the 2011-2012 school year, Phelan was given 10 extended days paid at his daily contract rate. In contrast, Tony Elliott's extended days and rate of pay were reduced that year from 225 to 210 contract days with extended days of employment to be paid at the contract rate (the difference between 210 hours and 185 hours) and Elliott was also given the option to work an additional 15 days at $27.00 per hour for six hours per day. For the 2012-2013 school year, Phelan's extended days were increased to at least 15 extended days at his daily contract. Phelan continued to receive the 15 extended days for the 2013-2014 school year. In contrast, Tony Elliott's extended days and rate of pay were reduced for the 2012-2013 school year from 210 to 185, with the option of working additional 25 six-hour days at the hourly rate of $27, for a total of 210 days.

Granting the appropriate deference to the Plaintiff's evidence, Phelan is not similarly situated to Plaintiff. First, there are differences between Plaintiff's job responsibilities and Phelan's job responsibilities. The record reflects that Phelan worked as a teacher at the Academy, while Plaintiff worked as a counselor at ADT. Elliott described his job duties to include intake and orientation of new students and their families and the creation of an Individual Treatment Plan for each student; completion of progress summaries for the students; treatment review; communication with parents weekly; reporting to Court Designated Workers and DJJ workers; design of aftercare treatment plans; and group counseling sessions. In contrast, Phelan

serves as a Lead Teacher at the Academy. Because the Academy did not have a principal on-site and Phelan has an administrative certification, Phelan was designated Lead Teacher and given additional responsibilities to fill this void. While the Academy operates 185 days, Phelan's involvement in summer school required he be given the extended days in question. Phelan did not receive payment for any days beyond those extended days.

Second, the salaries for Elliott and Phelan are funded from different sources. While both schools are alternative education programs within the Hopkins County School District, the schools receive funding from different sources. A significant amount of ADT's funding comes from the Kentucky Department of Juvenile Justice ("DJJ") and the Kentucky Education Cooperative for State Agency Children ("KECSAC"). Elliott conceded in his deposition that ADT teacher and counselor salaries rely on funds from DJJ and KECSAC. (Elliott Dep. at 22.) In fact, a District budget document shows that Elliott's entire salary in 2011 came from DJJ funds. (DN 27, Exhibit 2.) Because the Plaintiff's pay is the primary issue in the present case, the difference in how each school funds its teacher compensation is particularly relevant to determining which employees are similarly situated. See Reiser v. University of Cincinnati, 2006 WL 1876886, *8 (S.D. Ohio. July 5, 2006)(employees who hold positions funded by different sources of revenue may not be similarly situated in all material respects).

These differences between Plaintiff and Phelan's position, duties, and salary funding preclude a finding that Plaintiff and Phelan are similarly situated in all relevant aspects. Accordingly, Plaintiff has failed to provide sufficient evidence to establish his prima facie case of racial discrimination.

### B. Legitimate, Non–Discriminatory Reason

Assuming that Plaintiff could establish a prima facie case of race discrimination,

Defendants have offered a legitimate reason for the reduction of Elliott's extended days. Defendants assert that since the late 2000s, the District has suffered from significant fluctuation in and cuts to funding for the ADT program, as well as a reduction in ADT student enrollment. While serving as Deputy Superintendent of the Hopkins County School District, Linda Zellich became aware that funding levels for ADT would not be maintained at consistent levels and that the overall trend was for funding levels to follow a general pattern of reduction. Zellich spoke with the Director of KECSAC, Dr. Ronnie Nolan, regarding how to accommodate reduced levels of funding while still preserving the existence of the ADT program. Dr. Nolan informed Zellich that other districts were reducing teachers' days of employment to the base amount, and then allowing these teachers to work at an hourly rate on additional days to ensure the program operated on the required number of days. (Zellich Second Affidavit at ¶¶ 3-6.) Facing this uncertainty, the District sought to cut costs in various ways including downsizing the ADT program. In fact, there were discussions to eliminate the program completely. (Elliott Dep. at 55.) In an effort to preserve the ADT program, Zellich testified that some employees were transferred, while others saw employment days reduced. Accordingly, Defendants have offered a legitimate, non-discriminatory explanation for their reduction of Elliott's employment days, thus destroying "'the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.'" Manzer, 29 F.3d at 1082 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981)).

### C. Pretext

In order to establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer, 29 F.3d at 1084. Ultimately, to carry his burden in opposing

9

summary judgment, the Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendants' explanation of why they reduced his employment days. Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009). Plaintiff contends that Defendants' proffered reason did not actually motivate the reduction of his hours and pay.

 First, Plaintiff argues that Defendants' assertion of reduced funding for the ADT program is belied by the fact that the ADT program was moved in December of 2011 from the Anton Road school to a much smaller facility on Sugg Street for the express purpose of saving money and that the monies saved from the move should offset any reduction in funding experienced in the ADT program. Plaintiff offers no support for his claim that relocation of the ADT program to a smaller facility negated the entire budget shortfall for the program or the reduced student enrollment issues. Furthermore, Plaintiff argues that that former ADT Principal Joe Barlow believed the move of the ADT program "was a step toward eventually eliminating the Day Treatment program." (Barlow Aff. at ¶ 10.) Whether the relocation of the ADT program was done in an effort to prevent the elimination of the ADT program or in an effort to eliminate the entire ADT program does not create a genuine dispute as to whether Defendants' reason for the reduction of Elliott's hours was racially motivated. Elimination of the ADT program would potentially affect all employees of ADT, not just Elliott.

 Second, Plaintiff argues that the Defendants' assertion that Elliott's pay was cut because of reduced funding is called into question by the fact that in 2011-2012, the year that Elliott's pay was first reduced, the ADT program's funding level from the DJJ was $107,630.00, more than triple from two years earlier. The record reflects that for the 2007-2008 school year, ADT received $119,589.00 from DJJ and $77,280.00 from KECSAC. Funding from DJJ fell in 2008-2009 to $80,084.85 and rose slightly to $81,150 from KECSAC. In 2009-2010, funding dropped

dramatically to only $32,361.56 from DJJ and $36,737.01 from KECSAC. For the 2011-2012 school year, ADT received $107,630.00 from DJJ and $61,740.00 from KECSAC. The funding dropped again for the 2012-2013 school year to $96,867.00 from DJJ and $49,113.00 from KECSAC. Thus, a review of ADT funding reflects dramatic fluctuations between 2007 and 2012. Further, it is undisputed that conversations between District administrators and the directors of the DJJ and KECSAC revealed that the coming years would see an overall trend of reduced funding. Concerned with the dramatic fluctuation, Zellich testified that the District adopted the approach of other districts by reducing teachers' days of employment to the base salary amount in the ADT program, and then allowing these teachers to work at an hourly rate on additional days to ensure that the programs operated on the required number of days. In fact, as a result of the overall trend of reduced funding, other employees associated with the ADT program experienced reduction in hours, were not provided additional days at an hourly rate, or were transferred to another school.

Plaintiff cannot avoid summary judgment merely by disagreeing with the District's business decision to reduce ADT's employee's days in an effort to account for projected budget shortfalls and reduced student enrollment. See Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285–86 (6th Cir. 2012) (the pertinent issue is whether the employer made an honest, informed business judgment, not whether that business judgment was correct or ideal); Stein v. National City Bank, 942 F.2d 1062, 1065 (6th Cir. 1991) ("It is not the function of courts to judge the wisdom of particular business policies . . ."); Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996), cert. denied, 519 U.S. 1055 (1997) ("the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with"; rather, it forbids them only from making decisions "for impermissible, discriminatory reasons"); Adams

11

v. Tenn. Dept. of Finance & Admin., 179 Fed. Appx. 266, 272 (6th Cir. 2006) ("Courts are not intended to act as super personnel departments to second guess an employer's facially legitimate business decisions."). Plaintiff has failed to demonstrate that Defendant's proffered reasons had no basis in fact, did not actually motivate Defendant's challenged conduct, or were insufficient to motivate Defendant's challenged conduct. See Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 268 (6th Cir. 2010). The Court concludes that Plaintiff has not shown Defendants' proffered reason for the reduction of Elliott's hours was pretext for racial discrimination. Accordingly, Defendants are entitled to summary judgment as to this claim.[1]

### D. Remaining State Law Claims

Having dismissed the Plaintiff's federal claim, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." Id. at 726.). Therefore, Plaintiff's pendent state law claims are dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the motion by Defendants, Board of Education of Hopkins County, Kentucky, Superintendent Linda Zellich, and former Superintendent James Lee Stevens, for summary judgment dismissing Plaintiff's claim for racial

---

[1] Plaintiff argues that the School District's failure under former Superintendent Steven's administration to honor the terms of the 2002 Settlement Agreement with Plaintiff by failing to hire any African-American candidates for central office positions suggests the likelihood of racial animus on the part of Stevens and the District. "[T]he pattern-or-practice method of proving discrimination is not available to individual plaintiffs." Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 575 (6th Cir. 2004) ("We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case.") "Pattern-or-practice evidence may," however, "be relevant to proving an otherwise-viable individual claim for disparate treatment under the McDonnell Douglas framework." Id. Because this Court has determined that Plaintiff's claim is not "otherwise viable," the pattern-or-practice argument is irrelevant here. See Segel v. Kimberly-Clark Corp., 2010 WL 3488813, *3 (E.D. Mich. Aug. 31, 2010).

12

discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) [DN 27] is **GRANTED.** This claim is dismissed with prejudice. Plaintiff's state law claims are dismissed without prejudice. A Judgment will be entered consistent with this Opinion.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
United States District Court

October 9, 2015